Margaret A. DeFOREST,
Plaintiff-Appellant,

v.

Patrick M. DeFOREST,
Defendant-Appellee.

Civ. No. 9077.

Supreme Court of North Dakota.

April 30, 1975.

Bruce E. Bohlman, and Shaft, Shaft, McConn & Fisher, Grand Forks, for plaintiff-appellant; argued by Bruce E. Bohlman, Grand Forks, and Nancy Maxwell, Senior Law Student.

Christensen & Baer, Bismarck, for defendant-appellee; argued by Carma Christensen, Bismarck.

PEDERSON, Judge.

## CASE SUMMARY

This is an appeal by the plaintiff, Margaret A. DeForest, from a judgment of the district court of Burleigh County granting both Margaret and Patrick M. DeForest a divorce on the ground of irreconcilable differences. The judgment provides for an alternating or split custody of the DeForests' daughter, Margaret Ann. It is from this part of the judgment that Margaret appeals.

Judgment reversed and remanded.

## FACTS

The DeForests were married on August 19, 1967, at Colorado Springs, Colorado. They have one child, Margaret Ann (hereinafter Peggy), born on April 11, 1970. Until the parties separated in June of 1974, they lived in Bismarck where both of them taught school. At the time of the divorce Margaret and Peggy were living in Grand Forks where Margaret was working toward a Masters Degree in special education at the University of North Dakota, and Patrick was living in Bismarck where he taught in the Bismarck public school system.

Philosophical differences over the role of the mother of a preschool child being employed outside the home, and differences regarding household activities and the parties' personal lives were significant reasons why the marriage resulted in divorce. Margaret brought the action on the ground of irreconcilable differences and Patrick counterclaimed on the same ground. A judgment was entered on October 4, 1974, granting each of the parties a divorce.

The divorce decree provides for an alternating or split custody until Memorial Day 1976, with the provision that either party may make application for a hearing to determine subsequent custody. It is from this

part of the judgment that Margaret appeals, asking that sole custody of Peggy be awarded to her. Patrick argues that the split custody decision is not clearly erroneous, but if the court determines that split custody is not in the best interests of Peggy, sole custody should be awarded to him.

By an interim order prior to the divorce decree, Margaret was awarded temporary custody of Peggy. Margaret and Patrick had a great deal of difficulty dealing with the child custody award and visitation rights under the interim order. They appear to be very bitter toward each other and have let this bitterness permeate their relationships with Peggy. The relations became so strained that Patrick obtained a court order granting him custody of Peggy for the 1974 Labor Day weekend.

Apparently neither of the parties believed that the testimony at the divorce proceeding had any significant bearing on the issues involved. No part of the transcript was incorporated in the appendix as provided in Rule 30 of the North Dakota Rules of Appellate Procedure. Strict adherence to the Rules of Appellate Procedure was not evident in other respects as well.

With regard to the matter of custody of Peggy, the district court made the following findings of fact:

"e. *Vacations:* During the following holidays the parties shall have alternate custody of the daughter so that a different parent has custody on each succeeding named holiday: Christmas (includes Christmas Eve and Christmas Day), New Year's Day, Easter, The Fourth of July and Thanksgiving. The parent not having custody during the Christmas holiday shall have visitation rights of two hours during that holiday. Holidays shall also include the days off school which are granted in the state in which the daughter is enrolled for that holiday so long as both the plaintiff and the defendant are employed as teachers.

\*　　\*　　\*　　\*　　\*　　\*

"j. *Joint Custody:* The plaintiff is awarded custody of the parties minor daughter from this date until January 12, 1975; the defendant is granted custody of said daughter from January 12, 1975, to Memorial Day, 1975; the parties shall each be awarded seven (7) weeks of custody during the 1975 summer with the respective weeks to be determined by the parties and in the absence of such agreement the Court shall make a determination thereon; the plaintiff shall be awarded custody of the minor daughter at the completion of the fourteenth (14th) week of the summer of 1975 but not later than official registration date at the University of North Dakota which custody shall continue until January 20, 1976; the defendant shall be awarded custody from January 20, 1976, until Memorial Day, 1976; either party may make application to the Court for a hearing date for determination of custody subsequent to Memorial Day, 1976, said application to be made during the month of May, 1976; during the periods of custody as hereinbefore set forth, the following rules shall apply: The non-custody parent shall have custody for the Thanksgiving holidays commencing at 5:00 o'clock on Wednesday and termination not later than 9:00 p. m. on the following Sunday; the plaintiff shall have custody during the Christmas vacation period for the year 1974 and for the year 1975 the plaintiff shall have the first week of Christmas vacation and the defendant the second week; the non-custody parent shall be awarded one weekend of visitation each month with this weekend visitation to commence at 5:00 p. m. on Friday evening and to terminate not later than 9:00 o'clock p. m. on Sunday evening; in all cases of the exercise of visitation rights by the non-custody parent at least two days advance written notice shall be given by the non-custody parent clearly indicating the time that said parent (sic) [child] will be taken from the custody parent home and returned thereto by the non-custody parent; the

Court takes notice that the evidence presented by the parties does not show any unfitness of either parent."

The conclusions of law and the judgment entered contain the identical provisions.

After filing a notice of appeal, but prior to the time that Patrick was to take custody of Peggy on January 12, 1975, Margaret filed a motion in the district court to modify the custody award to grant full and absolute custody and control of Peggy to her. Margaret contended that changed conditions and circumstances rendered it necessary for a change in the custody provisions of the judgment, and that periodic and split custody was not in the best interests of Peggy. She also offered to produce testimony concerning the results of psychological testing pertaining to the changed circumstances and the best interests of the minor child. In preparation to oppose this motion, Patrick also underwent psychological testing. The results of these tests were exchanged between the clinical psychologists for each of the parties.

The district court dismissed the motion on the basis that the court had lost jurisdiction of the issue with the appeal to the Supreme Court. This ruling is not challenged in this appeal.

## ISSUES

We conclude that the overriding issue in this case is the adequacy of the findings of fact concerning the custody of Peggy. We will also consider whether a split or alternating custody decision is per se erroneous, and whether a split or alternating custody

decision is, in fact, a finding that all things are equal, requiring the application of the provisions of § 30–10–06(2), N.D.C.C., relating to custody preference.

## DECISION

A review of the findings in a divorce action, including a custody determination, is limited to a determination of whether or not such findings are clearly erroneous within the purview of Rule 52(a), N.D.R. Civ.P. This position was stated in Ferguson v. Ferguson, 202 N.W.2d 760, 761 (N.D. 1972), and has been reaffirmed in Silseth v. Levang, 214 N.W.2d 361 (N.D.1974), Filler v. Filler, 219 N.W.2d 96 (N.D.1974), Jordana v. Corley, 220 N.W.2d 515 (N.D.1974), and Matson v. Matson, 226 N.W.2d 659 (N.D. 1975).

Although there is a finding of fact determining the question of the custody of Peggy in this case, we are concerned that such finding does not explicitly state that such disposition is in the best interests of Peggy.[1]

In *Ferguson* we said "that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other" is to be dealt with as a finding of fact and, in *Matson, supra,* at 663, we said:

"This court has repeatedly held that the welfare and best interests of minor children is the paramount consideration in determining the custody of such children in a divorce action. Silseth v. Levang, *supra*; Ferguson v. Ferguson, *supra*; Ficek v. Ficek, 186 N.W.2d 437

1. We do not imply that the exact words "best interests of the child" must be used in the findings. We agree with the authors of Beyond the Best Interests of the Child, Goldstein, Freud, and Solnit (Free Press, New York 1973), when they conclude that a child whose placement must be determined in legal controversy has already been deprived of his best interests, either by the loss of his parents; or by their rejection, ineptitude,

and negligence; or by the breaking up of his family ties for other reasons. These authorities suggest that a more appropriate guideline is "what available alternative is the least detrimental to the child," which would serve to remind lawyers, witnesses and decision makers that their task is to salvage for the child as much as possible out of an unsatisfactory situation.

(N.D.1971); Noakes v. Noakes, 185 N.W.2d 486 (N.D.1971); Kucera v. Kucera, 117 N.W.2d 810 (N.D.1962)."

Unfortunately in the instant case, neither in the finding on custody nor in the oral opinion do we find any language which indicates that the trial court either considered or found that it was in Peggy's best interests or least detrimental to her that the split custody arrangement be made. When this matter was discussed during oral argument before this court, counsel for both parties stated that such finding could be inferred or presumed from the custody decision itself.

In Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960), this court said that we must presume that the trial court considered the interests and welfare of the children when awarding permanent custody in a divorce decree. The standard of our review of findings of fact in divorce actions is the "clearly erroneous" test of Rule 52(a), N.D.R.Civ.P. Grant v. Grant, 226 N.W.2d 358 (N.D.1975). In Matson v. Matson, *supra*, at syllabus 1, this court specifically addressed the question of child custody:

> "A finding of fact relating to the welfare and best interest of children in a custody dispute is within the purview of the 'clearly erroneous' rule (Rule 52(a), N.D. R.Civ.P.)."

██ The purpose of Rule 52(a) is "to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment it entered thereon." Ellendale Farmers Union Cooperative Ass'n v. Davis, 219 N.W.2d 829, 836 (N.D.1974). Rule 52(a) requires that the court "find the facts *specially.*" [Emphasis added.]

A study of the record reveals that the only expression by the trial court to indicate that it considered the welfare and best interests of the child is this statement made prior to the introduction of any evidence:

"I think both counsel know that it's basically the position of the Court—I really can't say I don't care but the predominate concern of the Court is the welfare of the child, it's not the welfare of either one of you."

Before we make a determination of whether the findings of fact are "clearly erroneous," we must understand the basis for the decision of the trial court.

Although the findings do not explicitly say that the court made its custody decision on the basis of the best interests of the child, we note that it announced at the commencement of the hearing that the best interest of the child was its predominant concern.

We upheld findings in Matson v. Matson, *supra,* because we found that the findings disclosed that the custody determination was based upon the welfare of the children and this was supported by the trial court's oral opinion.

In this case the trial court's findings of fact are inadequate with regard to the question of the best interest of the child. The award of custody contains no reference to the basis of the trial court's decision. It is therefore impossible for this court to obtain a correct understanding of the factual issues decided by the trial court in order to determine on review whether that award is based upon the best interest of the child. See Kraemer v. Kraemer, 227 N.W.2d 61 (Wis.1975).

██ A finding of fact on a controlling issue which fails to show the basis for a trial court's conclusion is held to be clearly erroneous. Accordingly, that part of the judgment awarding custody is reversed and remanded for a more specific statement of the findings.

To the extent that Bryant v. Bryant, *supra,* is inconsistent with this holding, it is overruled.

■ Because the trial court has continuing jurisdiction in custody matters pursuant to § 30–10–15, N.D.C.C., either party may apply to that court for a modification after jurisdiction in the trial court has been re-established. The parties having indicated that additional testimony is available, it is permissible to reopen, either on motion of either party or direction of the court, the hearing on the question of custody for the introduction of such testimony.

■ Since other issues were fully briefed and argued and are likely to be raised again in the trial court, we will consider them.

Margaret argues that the trial court clearly erred in not awarding custody to her by virtue of the provisions of § 30–10–06, N.D.C.C., and that a split custody award is clearly erroneous.

Section 30–10–06(2), N.D.C.C., states that "as between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years, it should be given to the mother, and if it is of an age to require education and preparation for labor or business, then to the father."

■ By the very language of this statute, it gives no absolute and arbitrary preference to either parent. Its application is subject to a condition precedent—that the court find that in relation to the child's best interest, all things are equal as between the two parents. This does not foreclose a finding that the best interest of the child requires that the child spend time with each of the parents, if there is substantial evidence supporting such finding. (See plethora of custody cases annotated in 92 A.L.R.2d 695, and current developments in BNA's The Family Law Reporter.)

In this case there is testimony which could support a finding that Peggy needs both parents and that a split or alternating custody award is the least detrimental to her welfare. Professional opinions in the record did not dispute this. It is elementary that when the evidence adduced at the trial supports the finding, it will not be found clearly erroneous on appeal.

■ A finding that a split or alternating custody is in the best interests of a child, when supported by substantial evidence, is not clearly erroneous, nor is it in actuality a finding that all things are equal.

At syllabus 4 of Silseth v. Levang, *supra,* we said:

"It is not in the best interests of a child to *unnecessarily* change custody and bandy the child back and forth between parents. Stability is desirable." [Emphasis added.]

And, in Jordana v. Corley, *supra,* it was held that "while a court should not make unnecessary custody changes, that is not to say custody changes should never be made."

■ A party who has introduced evidence that supports a splitting of custody cannot thereafter convincingly argue that an award splitting custody is clearly erroneous.

Having concluded that the findings were insufficient, we deem them clearly erroneous, reverse the judgment as it relates to custody, and remand this case for further proceedings not inconsistent herewith.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.